UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Civil Action No. _____3:20-cv-00612_____

CHERYL A. HARFORD,

   Plaintiff,

v.

eFINANCIAL, LLC,

   Defendant.

_____/

## COMPLAINT

**NOW COMES** CHERYL A. HARFORD, through undersigned counsel, complaining of eFINANCIAL, LLC, as follows:

## NATURE OF THE ACTION

1. This action is seeking redress for violation(s) of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227 *et seq*.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

4. CHERYL A. HARFORD ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided at 7752 Highchair Lane, Jacksonville, Florida 32210.

5. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

1

6. eFINANCIAL, LLC. ("eFinancial") is a limited liability company organized and existing under the laws of Washington.

7. eFinancial has its principal place of business at 13810 SE Eastgate Way, Suite 300, Bellevue, Washington 98005.

8. eFinancial is a "person" as defined by 47 U.S.C. § 153(39).

## GENERAL ALLEGATIONS

9. Upon information and belief, eFinancial develops marketing campaigns using a combination of sales channels, with an emphasis on outbound telemarketing.

10. Upon information and belief, eFinancial utilizes third party vendors to market its services.

11. Upon information and belief, eFinancial's vendors are essential to their telemarketing activities.

12. Upon information and belief, eFinancial's ability to increase revenue depends significantly on their access to high-quality vendors.

13. eFinancial is subject to liability under the TCPA for actions of their third party vendors who are engaging in outbound telemarketing efforts on their behalf.

14. eFinancial's third party vendors identify themselves as representatives of "eFinancial."

15. Upon information and belief, eFinancial's outbound telemarketing efforts include the use of an automated telephone dialing system ("ATDS") to solicit consumers nationwide.

16. The Federal Trade Commission ("FTC") has held that a basic function of an ATDS is the ability to dial thousands of numbers in a short time period.

17. The technology employed by eFinancial has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

18. An ATDS allows its telemarketing agents to only communicate with consumers who answer their phone.

19. Consequently, eFinancial shifts the burden of wasted time to consumers with unsolicited calls and messages.

## FACTUAL ALLEGATIONS

20. At all times relevant, Plaintiff was the sole operator, possessor, and subscriber of the number ending in 1655.

21. At all times relevant, Plaintiff's number ending in 1655 was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

22. At all times relevant, Plaintiff was financially responsible for her cellular telephone equipment and services.

23. Earlier this year, Plaintiff requested insurance quotes.

24. Weeks later, Plaintiff started to receive phone calls from eFinancial.

25. When answering eFinancial's phone calls, Plaintiff noticed clear pause prior to being connected to eFinancial's representative.

26. Uninterested in eFinancial's offerings, Plaintiff demanded that they stop calling.

27. Despite Plaintiff's request(s), Plaintiff continued to receive phone calls from numbers leading back to eFinancial – including, (904) 306-5464 on:

05/11/2020 at 06:55 PM

        05/14/2020 at 10:34 AM
        05/14/2020 at 01:20 PM
        05/14/2020 at 04:08 PM
        05/14/2020 at 07:48 PM
        05/15/2020 at 11:36 AM
        05/15/2020 at 04:01 PM
        05/16/2020 at 12:16 PM
        05/18/2020 at 06:56 PM
        05/19/2020 at 08:39 AM
        05/19/2020 at 05:48 PM
        05/19/2020 at 06:18 PM
        05/20/2020 at 10:33 AM
        05/20/2020 at 04:20 PM
        05/20/2020 at 07:01 PM
        05/21/2020 at 05:52 PM
        05/22/2020 at 11:32 AM
        05/22/2020 at 05:20 PM
        05/26/2020 at 03:05 PM
        05/26/2020 at 05:36 PM
        05/27/2020 at 02:17 PM
        05/27/2020 at 07:38 PM
        05/28/2020 at 11:55 AM
        05/28/2020 at 03:27 PM
        05/28/2020 at 05:37 PM
        05/29/2020 at 11:50 AM
        05/29/2020 at 02:11 PM
        05/29/2020 at 06:10 PM
        06/01/2020 at 02:57 PM
        06/01/2020 at 06:32 PM

28.   Plaintiff asked eFinancial to stop calling her on multiple occasions; yet, eFinancial continued calling Plaintiff at least twenty-five (25) times after she told eFinancial to stop.

## DAMAGES

29.   eFinancial's phone calls have caused Plaintiff actual harm, including but not limited to, aggravation that accompanies persistent and unwanted phone calls, anxiety, emotional distress, increased risk of personal injury resulting from the distraction caused by the phone calls, wear and tear to Plaintiff's cellular phone, intrusion upon and occupation of Plaintiff's cellular telephone,

temporary loss of use of Plaintiff's cellular phone, invasion of privacy, loss of battery charge, loss of concentration, mental anguish, nuisance, the per-kilowatt electricity costs required to recharge Plaintiff's cellular telephone as a result of increased usage of Plaintiff's telephone services, and wasting Plaintiff's time.

30. Concerned with having had her rights violated, Plaintiff was forced to retain counsel and incur attorney's fees to vindicate her rights.

## CLAIMS FOR RELIEF

### COUNT I:
### Telephone Consumer Protection Act (47 U.S.C. § 227 *et. seq.*)

31. Paragraphs 9 through 30 of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

32. Among other things, the TCPA prohibits certain calls to wireless and residential numbers unless the caller has the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A).

33. Under the TCPA consent rules, some types of calls require prior express written consent, while other types of calls do not require that the consent be in writing.

34. "Prior express written consent" is required for (a) all telemarketing/promotional calls/texts made using an ATDS placed to wireless numbers, and (b) all artificial or prerecorded telemarketing/promotional voice calls to wireless and residential numbers.[1]

---

[1] 47 C.F.R. §§ 64.1200(a)(2), (a)(3).

35. The TCPA consent rules define "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an ATDS or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

36. eFinancial placed or caused to be placed no less than 25 non-emergency solicitation/telemarketing calls to Plaintiff's cellular telephone number ending in 1655 utilizing an ATDS without Plaintiff's prior express written consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

37. Upon information and belief, based on the clear pause Plaintiff noticed, eFinancial employed an ATDS to place calls to Plaintiff's cellular telephone.

38. Upon information and belief, the ATDS employed by eFinancial transfers the call to a live representative once a human voice is detected, hence the clear pause.

39. Upon information and belief, the system employed by eFinancial to place the calls to Plaintiff's cellular phone produced Plaintiff's telephone number using a random or sequential number generator as Plaintiff never provided her phone number to eFinancial directly.

40. Upon information and belief, the system employed by eFinancial to place phone calls to Plaintiff's cellular telephone has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

41. Upon information and belief, eFinancial has no database to maintain and update consumers' contact preferences and consent to call them.

42. As a result of eFinancial's violations of the TCPA, Plaintiff is entitled to receive $500.00 in damages for each such violation.

43. As a result of eFinancial's knowing and willful violations of the TCPA, Plaintiff is entitled to receive up to $1,500.00 in treble damages for each such violation.

**WHEREFORE**, Plaintiff requests the following relief:

A. an order finding that eFinancial violated the TCPA;

B. an order enjoining eFinancial from placing or causing to place further violating calls to Plaintiff;

C. an award of $500.00 in damages to Plaintiff for each such violation;

D. an award of treble damages up to $1,500.00 to Plaintiff for each such violation; and

E. an award of such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: June 16, 2020

Respectfully submitted,

**CHERYL A. HARFORD**

By: /s/ *Alexander J. Taylor*

Alexander J. Taylor, Esq.
Florida Bar No. 1013947
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
+1 630-575-8181
ataylor@sulaimanlaw.com